UNITED STATES DISTRICT COURT
For The
SOUTHERN DISTRICT OF FLORIDA

Civil Action No.

| | |
|---|---|
| RAPTOR LLC & | ) |
| CONCRETE SERVICES, LLC | ) |
| | ) |
| (Plaintiffs) | ) |
| | ) |
| vs. | ) |
| | ) |
| BARREIRO CONSTRUCTION CORP. & | ) |
| ODEBRECHT CONSTRUCTION INC. | ) |

(Defendant

**COMPLAINT FOR PATENT INFRINGEMENT**

The Plaintiffs, Raptor, LLC, (hereinafter also "Raptor"), & Concrete Services, LLC, (hereinafter also "Concrete Services"), by counsel, alleges for their Complaint, upon knowledge, with respect to their own acts, and upon information and belief, as to all other matters, as follows:

**Nature of the Action**

The Plaintiffs, Raptor, LLC., (Raptor) a Florida Limited Liability Company, and Concrete Services, LLC, (Concrete Services), (both based in Boynton Beach, Florida), brings this action against the Defendant Barreiro Construction Corp. ("*Barreiro Construction*"), under **35 USC 271(a)** for direct infringement of US Patent 9,435,085; and, against Odebrecht Construction Inc. ("Odebrecht"), under **35 USC 271(b)**, for inducing infringement of US Patent 9,435,085, US ***Patent 9,435,085*** (also **"085 Patent"** or **"Barrier Wall Patent"),** annexed hereto as **Exhibit "1";**

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338 (patent laws of the United States), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1367 (supplemental jurisdiction), and principals of ancillary and pendent jurisdiction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b), §1391(c), and otherwise because, among other things, both the Defendants, personally resides in this judicial district. Moreover, the corporate Defendants, have their principal place of business in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

**Parties**

3. The Plaintiff, Raptor, LLC., a Florida Limited Liability Company, is the owner by absolute assigment, of US Patent 9,435,085 (also **"085 Patent"** or **"Barrier Wall Patent").**

4. The Plaintiff, Concrete Services LLC, a Florida Limited Liability Company, is the exclusive licensee of US Patent 9,435,085 (also **"085 Patent"** or **"Barrier Wall Patent"),** and, has the right to enforce same.

5. The Odebrecht Construction Inc. ("*Odebrecht*"), is a Florida Corporation having its principle place of business in Coral Gables, Florida. Upon information and belief, the Defendant, *Odebrecht*, conducts its business from its offices in Coral Gables, Florida.

6. The Defendant, Barreiro Construction Corp. ("*Barreiro Construction*"), is a Florida Corporation having its principle place of business in Princeton, Florida. Upon information and belief, the Defendant, conducts its business from its offices in Princeton, Florida.

## BACKGROUND FACTS

*7.* The Plaintiff, Concrete Services LLC and the Defendant, Barreiro Construction Corp. are competitors, both being engaged in the fabrication of concrete structure for highway and bridge construction projects in the State of Florida.

*8.* On September 16, 2016, **US Patent 9,435,085** was issued to the inventors, Patrick Shawn Free and Eric C. Kontos, for an invention entitled ***"System & Method For Slip Forming Monolithic Reinforced Composite Concrete Structures Having Multiple Functionally Discrete Components"***

9. On May 24, 2015, the inventor, Patrick Shawn Free assigned all right title and interest in the United States Patent No**. US Patent 9,435,085,** to RAPTOR (**Exhibit 2.1**).

10. On May 24, 2015,, Eric C. Kontos, assigned all right title and interest in the United States Patent No**. US Patent 9,435,085,** to Raptor (**Exhibit 2.2)**

11. On September 16, 2016, Raptor granted Concrete Services the exclusive right and license under United States Patent No**. US Patent 9,435,085,** (also collectively "Patent Rights")**,** including the right to enforce such patents.

12. At all times material hereto, the Plaintiffs have and continue to notice the industry, including the Defendants, of their issued patent rights, and to prominently mark their Tunnel Molds with numbers of their issued patents. Upon information and belief, the Florida Department of Transportation (FDOT) standards and regulations, did not permit the Plaintiffs' to "mark" the slip formed coping structures, fabricated by Plaintiffs, under the Plaintiffs' US Patent **9,435,085** with the numbers of the Plaintiffs' United States Patents. Accordingly, the numbers of the Plainfiffs' patent do not appear on on any structures fabricated with thde Plaintiffs' patent

molds and fabrication processes. Notwithstanding, all the Plaintiffs' Molds are prominently marked with the above patent numbers.

13. The fabrication of slip formed structures, with ***exposed*** rebars, on State highway construction projects, in the State of Florida, is governed by Florida Department of Transportation (FDOT) standards and engineering specifications.

14. The means and methods for slip forming of reinforced concrete structures, with exposed re-bars, on State highway construction projects in the State of Florida, can only be accomplished with the proprietary equipment and methods developed by the Plaintiffs, which are compliant with the FDOT standards & specification for bridge and highway construction; and/or with the functional equivalent thereof.

15. On **March 17, 2015**, *Odebrecht* solicited Plaintiffs to submit a proposal ("Request for Proposal"), for "bridge railing". A true and correct copy of the *Odebrecht* Request for Proposal is annexed heretop as **Exhibit "3"** A "bridge railing" is a "composite structure" comprising a "bridge coping" and a "traffic rail", by slip forming a "traffic rail", upon the exposed rebars of a slip formed bridge coping or a road pad. Accordingly, the exposed rebars extending from the bridge coping, are embedded within the concrete of the traffic rail. Thus, the rebar reinforcement for each component of the resulting composite is shared, by each component of the composite structure.

16. On **May 7, 2015**, and again of **July 1, 2015**, the Plaintiffs personally met with *Odebrecht* executives and engineers, made a presentation of the Plaintiffs' proprietary and patented technology for the slip molding a composite concrete, with exposed re-bars; and, solicited future coping structure work, under subcontract, from *Odebrecht*. The Plaintiffs' presentation included a "show & tell" video demonstration of the Plaintiffs' proprietary and

patented technology slip molding system and methodology; prominently featured and identified the Plaintiffs' issued patents; and, emphasized the cost advantages, including, specifically, the early completion, incentive payments ("bonus payments"), potentially available to *Odebrecht*, utilizing the Plaintiffs' proprietary and patented technology slip molding system and methodology.

17. *Odebrecht*, thereafter, adopted and used the Plaintiffs' proprietary and patented process for the slip molding a composite concrete, in the preparation of a bid the folllowing Miami-Dade Expressway (MDX) highway construction projects:

> MDX Project No. 83628, SR 836/Dolphin Modernization Project (NW 57th Avenue to NW 17th Avenue; and
>
> MDX Project No. 83628, Expressway Interchange Modification @ NW 87th Avenue

18. *Odebrecht* was the successful bidder for the MDX highway construction projects set forth in Paragraph (17);

19. The *Odebrecht* winning bid-proposal projected a contract completion date of approximately 350 days sooner than MDX contract construction schedule required, which was only attainable with the Plaintiffs' proprietary and patented slip molding systems, molds and methodology. Upon information and belief, the MDX early completion, incentive (bonus) payment is **$50,000/day**; and, accordingly, *Odebrecht* stands to collect **$17,500,000** in bonus payments, for meetimg its projected contract completion date.

## <u>**COUNT I.**</u>
***(Direct Patent Infringement - Barreiro Construction)***
35 USC 271(a)

20. Plaintiffs incorporate Paragraphs (3) to (19) as if restated herein, and further allege:

21. From and after the Miami-Dade Expressway award of the contract to *Odebrecht* for the highway construction projects set forth in Paragraph (17), *Odebrecht* subcontracted *Barreiro Construction* to slip form the reinforced, concrete composite structures for such projects, in accordance with the Plaintiffs' proprietary and patented slip molding systems, molds and methodology.

22. Upon information and belief, *Barreiro Construction* was aware of the Plaintiffs' proprietary and patented slip molding systems, molds and methodology, prior to it entering into its subcontract with *Odebrecht.*

23. Under the *Barreiro Construction* contract with *Odebrecht*, *Barreiro Construction* was to provided the equipment (e.g. tunnel molds) and materials (e.g. concrete), and *Odebrecht* designated the construction specifications (e.g. <u>FDOT Compliant Molds & Processes</u>), and job site location (e.g. MDX highway projects), for the *Barreiro Construction* slip forming the reinforced, composite concrete structures for the highway projects set forth in Paragraph (17).

24. Upon information and belief, *Odebrecht* also specified that *Barreiro Construction* utilize the Plaintiffs' <u>FDOT Compliant Molds & Processes</u>, as originally Plaintiffs' proposed to *Odebrecht* by Plaintiffs in May & June 2015, in order to meet the projected a contract completion date of approximately <u>350 days sooner than contract construction schedule required</u>,

25. Thereafter, *Barreiro Construction*, **surreptitiously** inspected the Plaintiffs' proprietary and patented Tunnel Molds on an FDOT restricted job site;

26. On or about **February 6, 2017**, *Barreiro Construction* arranged for one of its "former" employees, Luis Sevilla ("*SEVILLA*"), to seek employment with the Plaintiff, Concrete Services LLC., to **gain access** to Concrete Services non-public and proprietary information, relating to the Concrete Services proprietary and patented slip forming System and Tunnel Molds for FDOT Compliant Projects. Upon information and belief, *SEVILLA*, while in the employ of Concrete Services, **photographed and slavishly duplicate the measurements and specifications** of the Plaintiffs' patented & proprietary slip forming system and tunnel molds for FDOT Compliant Projects, and support equipment therefor (collectively "Trade Secrets"); and, thereafter **returned to the employment** by *Barreiro Construction*, where he disclosed such Trade Secrets to *Barreiro Construction*,

27. *Barreiro Construction* utilized the Trade Secrets, stolen by *SEVILLA* from Plaintiffs, to fabricate a series of tunnel molds, for use in the a process for slip forming a composite concrete structure for FDOT Compliant Projects, such as the slip forming of a barrier wall, in accordance with the process of Plaintiffs' US Patent **9,435,085.** The series of tunnel molds fabricated by *Barreiro Construction* were designed for forming a barrier wall on FDOT Compliant Projects, by sequentially slip forming, at a common site, (i) a first component of reinforced, concrete composite structure (e.g. traffic rail), with exposed rebars, followed thereafter (ii) by slip forming a subsequent component of the composite, upon said first component, so as to integrate the exposed rebars of the first component into the subsequent component of the composite. Each of the subsequently slip formed components of the composite can also have exposed rebars for incremental, slip forming fabrication of a composite

structure, (e.g. a bridge coping – component #1, integral with a traffic rail – component #2, integral with a barrier wall – component #3).

28. On **April 4, 2017**, upon learning of the *Barreiro Construction* fabrication of tunnel molds for fabrication of slip formed concrete composite structure on the MDX projects referenced herein in Paragraph (17), the Plaintiffs served *Barreiro Construction* with a **Notice of Infringement** of the Plaintiffs' patent rights, *Notice of Infringement* annexed hereto as **Exhibt "4"**

29. On **August 5, 2017**, *Barreiro Construction*, used the Plaintiffs' patented & proprietary slip forming process and tunnel molds for sequentially slip forming composite concrete structures, (Barrier Walls), on the highway construction projects referenced in Paragraph (17).

30. The *Barreiro Construction* process for sequentially slip forming composite concrete structures, (Barrier Walls), infringes Plaintiffs' US Patent 9,435,085, including, without limitatiion, **Claim 1** of US Patent 9,435,085, which is reproduced below:

> 1. A **process** for sequentially forming composite concrete structural components for road and bridge construction, wherein one or more component parts of the resultant concrete structural components have exposed rebars for the later integration with additional concrete and/or mechanical structural elements, said additional concrete and/or mechanical structural elements selected from the group consisting essentially of barrier walls, barricades, guard rails and any combination thereof, wherein the process comprises:
>
> A. Providing an iron work array wherein said iron work array comprises both (1) rebars for embedding within, and reinforcing, a first concrete highway structure and (2) rebars for extending from within said first concrete highway structure, for integration within and reinforcing a second concrete highway structure, to be formed at a later time;
>
> B. Providing a machine assembly having a tunnel mold comprising a mold cavity defined by a plurality of molding surfaces for forming said first concrete structure having both embedded and exposed rebars, wherein said tunnel mold has a leading or forward molding surface, a trailing or rear molding surface, and at least one tunnel,

through said mold cavity, extending from said leading or forward molding surface to said trailing or rear molding surface of said tunnel mold, said tunnel being of a sufficient height to accommodate passage of said extending rebars, through said mold cavity, from said leading or forward molding surface to said trailing or rear molding surface of said tunnel mold;

C. Slip forming said first component of said composite concrete structure by

a. Placing said machine assembly, equipped with said tunnel mold, in slip forming relation to said iron work array; and

b. Introducing concrete into said machine assembly for transfer into said mold cavity of said tunnel mold assembly, while continuously moving said machine assembly, equipped with said tunnel mold, over said iron work array, to slip form a first component of said concrete composite structure having both rebars embedded in first concrete structure, and concrete free rebars, which **extend** from said iron work array embedded in said slip formed concrete structure,

D. Slip forming a contiguous component onto said first component of said concrete composite structure, by incorporating therein, said concrete free rebars from said first component of said composite concrete structure, as reinforcement of said contiguous component.

31. The *Barreiro Construction* process for sequentially slip forming composite concrete structures, (Barrier Walls), infringes Plaintiffs' US Patent 9,435,085, including, without limitatiion, **Claim 9** of US Patent 9,435,085, which is reproduced below:

9. A **slip formed composite, reinforced concrete structure** having

A. A first slip formed concrete component of said composite, having at least a portion of an array of reinforcing material embedded within said first concrete component of said first component, and a portion of said reinforcing material extending from within said first component and essentially concrete free; and

B. At least one additional contiguous slip formed concrete component of said composite slip concrete composite wherein said additional contiguous slip formed concrete component is reinforced in part, with reinforcing materials extending from within said first component of said composite incident to slip forming thereof upon said first slip formed component.

32. The *Barreiro Construction* sequentially slip forming composite concrete structures is depicted in the photographs (annexed hereto as **Exhibits "5.1" "5.6", inclusive")** infringes .

33. **Exhibits "5.1" to "5.6",** depict the *Barreiro Construction* **process** for sequentially forming concrete structural components of a composite structure (e.g., Barrier Wall) utilizing a series tunnel molds, wherein

a. **Exh. Nos 5.1 & 5.2** - *Barreiro Construction* initially slip forms a Road Pad & Bridge Coping upon an Iron Work Array – the "initial component" of a composite structure. Exh. Nos. 5.1 & 5.2 depicting the Iron Work Array including rebar reinforcement for both the Road Pad and Extending Rebars, for reinforcement another component (Traffic Rail) of a composite. .

b. **Figs 5.3 & 5.4** - *Barreiro Construction* thereafter modifies the Extending Rebars for this initial component of the composite, with additional reinforcing steel, preliminary to slip forming of a Traffic Rail upon the Extending Rebars (a second component of a concrete composite with exposed rebars)

c. **Exh. Nos. 5.5 & 5.6** - *Barreiro Construction* thereafter modifies the Extending Rebars from the Traffic Rail reinforcement, by splicing additional reinforcing steel bars to the Traffic Rail reinforcement. Thus, upon slip forming the Traffic Rail with Extending Rebars (**Exh. No. 5.6**), a composite is formed, which permits the slip forming of a third component of a composite concrete upon the Traffic Rail

d. The slip forming of a third component (not shown) completes the fabrication of the composite (barrier wall).

34. **Exhibits "5.1" to "5.6",** also depict the **equipment** *Barreiro Construction* used in the process for sequentially forming concrete structural components of a composite, including a machine assembly utilizing a series tunnel molds, wherein

a. **Exh. Nos 5.1 & 5.2** - *Barreiro Construction* initially configures a Machine Assembly having a (Tunnel) Mold, mounted on a Conveyor. In operation of the Machine Assembly, *Barreiro Construction* places the (Tunnel) Mold in slip forming relation to the Iron Work Array; and, the Conveyor transports the Machine Assembly over the Iron Work Array, thereby forming a Road Pad (an initial component of a composite concrete structure) with Extending Rebars. Although not visible in **Exh. Nos 5.1 & 5.2**, the (Tunnel) Mold permits the concurrent slip forming an integral composite have two components, a Road Pad and Bridge Coping

b. **Exh. Nos 5.3 & 5.4** - As *Barreiro Construction* conveyor transports the (Tunnel) Mold, from right to left, in slip forming relation to the Iron Work Array, concrete is continuously introducing into the Hopper of the (Tunnel) Mold the mold, so as to slip form a Road Pad and Bridge Coping composite, with Extending Rebars.

c. **Exh. Nos 5.5 & 5.6** - *Barreiro Construction* thereafter adds additional reinforcement to the rebars of the Traffic Rail (**Exh. No. 5.5**), for support thereof, and splices additional rebars to the Traffic Rail reinforcement, to extend from within a Traffic Rail (**Exh. No. 5.6**). The first (Tunnel) Mold is removed from the Conveyor and replaced with a Traffic Rail Mold, and the slip forming process repeated, thereby forming a Traffic Rail with Extending Rebars, (**Exh. No. 5.6**) - (second component of the composite)

d. The slip forming is repeated, with yet another mold (not shown), thereby forming yet another component of the composite, upon the Extending Rebars from the Traffic Rail, whereby the Extending Rebars from the Traffic Rail are embedded within a slip formed third component of the composite, to form a barrier wall.

35. The *Barreiro Construction* process for sequentially forming concrete structural components of a composite, as set forth in Paragraphs 29, 33-34, was undertaken and performed by *Barreiro Construction* with the prior knowledge of the Plaintiffs patent rights, including **US Patent 9,435,085**, and/or with the knowledge of the general contractor, *Odebrecht,* of the Plaintiffs patent rights, which is imputed to *Barreiro Construction.* The *Barreiro Construction* awareness of the Plaintiffs patent rights, including **US Patent 9,435,085**, is evident from the *Barreiro Construction,* indemnification of *Odebrecht* from infringement of the Plaintiffs patent rights, including **US Patent 9,435,085.**

36. The *Barreiro Construction* process for sequentially forming concrete structural components of a composite, as set forth in Paragraphs 29, 33-34, literally infringes the Process Claims 1, 2, 6, 7 & 8 of **US Patent 9,435,085;** and/or infringes the Process Claims 1, 2, 6, 7 & 8 of **US Patent 9,435,085,** under the doctrine of equivalents**.** **Process claim charts** annexed hereto as **Exhibit "6"**

37. The *Barreiro Construction* process for sequentially forming concrete structural components of a composite, as set forth in Paragraphs 29, 33-34, produces a structure that literally infringes the Slip Formed Composite Claims 9, 10, 12, 14 & 15 of **US Patent 9,435,085;** and/or infringes the Slip Formed Composite Claims 9, 10, 12, 14 & 15 of **US Patent 9,435,085** under the doctrine of equivalents. **Stuctures claim charts** annexed hereto as **Exhibit "7"**

38. *Barreiro Construction* therefore intentionally infringed the Plaintiffs patent rights, including **US Patent 9,435,085.**

39. *Barreiro Construction* intentional infringement of the Plaintiffs patent rights, including **US Patent 9,435,085,** was calculated to damage the Plaintiffs; and, if not enjoined shall cause the Plaintiffs irreparable harm.

**WHEREFORE**, the Plaintiffs demand, as against the *Barreiro Construction*, damages and injunctive relief, as follows:

(a) A preliminary and final injunction against the continuing infringement of **US Patent 9,435,085;**

(b) An accounting for Plaintiffs' damages, specifically, the greater amount of the Defendants' profits or the Plaintiffs' losses, and in no event less than $40/linear foot;

(c) Destruction of all equipment used by Defendant in the infringement of the Process Claims of **US Patent 9,435,085**;

(d) Exemplary damages for intentional infringement of the greater amount of five (5) time the Plaintiffs' actual damages, or not less **$5,000,000**; and

(e) Attorney fees, interest and costs

**<u>COUNT II</u>**
***(Inducing Patent Infringement - Odebrecht)***
35 USC 271(b)

40. Plaintiffs incorporated Paragraphs (3) to (20), (23), (24), (33) & (34) as if restated herein, and further allege:

41. At all times material hereto, *Odebrecht,* was the prime, or general, contractor for the highway construction projects set forth in Paragraph (17).

42. The *Odebrecht* winning bid projected a contract completion date of approximately 350 days ahead of the contract schedule (also "early projected completion date"). Upon information and belief, this early projected completion date was only attainable, <u>within the *Odebrecht* budget for this contract</u>, by utilizing the Plaintiffs' proprietary and patented slip forming method and tunnel molds.

43. *Odebrecht* subcontracted the slip forming of concrete structures for the highway construction projects set forth in Paragraph (17), to *Barreiro Construction*, upon condtion that *Barreiro Construction* adopt and utilize slip forming methods and equipment, enabling *Odebrecht* attaining the early contract completion schedude, which had been specified in the *Odebrecht* winning bid for the highway constructoin projects set forth in paragraph (17)

44. Under the *Barreiro Construction* contract with *Odebrecht*, *Barreiro Construction* was to provided the equipment (e.g. Tunnel Molds) and materials (e.g, Concete), and *Odebrecht* designate the construction protocols (e.g. Construction Methods & Structure Specifications) and job site location, for the *Barreiro Construction* slip forming of the composite, concrete structures for the highway projects set forth in Paragraph (17).

45. Upon information and belief, *Odebrecht* specified that *Barreiro Construction*, utilize the Plaintiffs' proprietary and patented slip molding systems, molds and methodology, as originally proposed to *Odebrecht* by Plaintiffs in May & June 2015; and/or the equivalent slip molding systems, molds and methodology, as originally proposed to *Odebrecht* by Plaintiffs in May & June 2015, to achieve the early projected completion date, in the *Odebrecht* winning bid for the highway constructoin projects set forth in paragraph (17)

46. *Odebrecht,* knew and/or had reason to believe, that the *Barreiro Construction* adoption and use of the Plaintiffs' proprietary and patented slip molding systems, molds and methodology and/or equivalent slip molding systems, molds and methodology, as set forth in Paragraphs (33) & 34), would infringe one or more the Plaintiffs' patents and patent rights, including **US Patent 9,435,085.**

47. *Odebrecht's* actoins as set forth in Paragragphs (23), (24), (33), (34), (43) to (46), were calculated, and <u>intended to induce, and did induce</u>, *Barreiro Construction*, to infrnge Plaintiffs' proprietary and patented slip molding systems, molds and methodology and/or equivalent slip molding systems, molds and methodology, including **US Patent 9,435,085**

48. *Odebrech* was aware of the Plaintiffs' patent rights, and consequently required *Barreiro Construction* to indemnify *Odebrecht* from Plaintiffs' claims against *Odebrecht* for patent infringement.

**WHEREFORE**, the Plaintiffs demand an award of damages and equitable relief**,** as follows:

(a) A preliminary and final injunction against the continuing infringement US Patent **US Patent 9,435,085.**

(b) An accounting for damages, the greater amount of the Defendants' profits or the

Plaintiffs' losses, and not less than $8,750,000, (or not less than 50% of the $17,500,000 FDOT early completion bonus);

(c) Destruction of all infringing equipment;

(d) Exemplary damages for intentional infringement of not less than three (3) time the actual damages, or $26,250,000; and

(e) Attorney fees, interest and costs

**COUNT III**
(Unfair Competition)
***Trade Secret Theft - Barreiro Construction)***

49. Plaintiffs incorporated Paragraphs (3) to (17), (25) to (27) as if restated herein, and further allege:

50. The Plaintiffs' molds for slip forming concrete structures, with exposed rebars, were designed by Plaintiffs personnel, engineered to specifications specific for fabrication of FDOT Compliant Structures, (with "FDOT Compliant Molds"), and fabricated in-house, so as to preserve their proprietary features as "confidential".

51. These FDOT Compliant Molds have been developed over a period of several years, and have required substantial testing and refinement, at Plaintiffs' substantial expense, to obtain FDOT approval for use on FDOT bridge and highway projects.

52. These FDOT Compliant Molds are uniquely adapted to the slip forming concrete composite structures, with exposed rebars, in accordance with the FDOT standards and specification. These proprietary designs and engineering specifications of these FDOT Compliant Molds are hereinafter also referred to collectively as "Trade Secrets".

53. The Plaintiffs have, and continue to use reasonable measures to protect their

Trade Secrets in the proprietary features and specifications of their FDOT Compliant Molds for fabrication of FDOT compliant structures, including securely storing these molds in their gated facility in Boynton Beach; and, only permitting the use thereof on job sites have restricted access to contractors authorized to work on such job site.

54. The Plaintiffs' in-house security measures and practices, as set forth in Paragraph (53), have created a business environment within the Plaintiffs' faculties, in which the Plaintiffs' employees have been apprised and appreciate, of the proprietary nature of the designs and engineering specifications of such molds, and have been apprised and understand that they have an obligation to maintain these designs and engineering specifications as "confidential".

55. On or about **February 6, 2017**, Luis Sevilla, ("*SEVILLA*") applied for a job with the Plaintiffs (Concrete Services, LLC), at its Boynton Beach headquarters, claiming to have been previously discharged by his employer, *Barreiro Construction.* Plaintiffs hired *SEVILLA* on February 6, 2017. As a Concrete Services employee, *SEVILLA*

a. was given access to the equipment stored within the Plaintiffs secured gated facility in Boynton Beach, including the Plaintiffs proprietary slip molds;
b. made aware of the security measure set forth in Paragraph (50);
c. made aware the proprietary nature of the Plaintiffs' slip molds; and
d. made aware of his obligation to maintain these designs and engineering specifications of the Plaintiffs' slip molds as "confidential"

56. Upon information and belief, *SEVILLA*, while in the employ of the Plaintiffs, took photographs of the Plaintiffs' FDOT Compliant Molds, duplicated and recorded the design features and the engineering specifications of the Plaintiffs' FDOT Compliant Molds. After only **six (6) days on the job**, *SEVILLA* quit his job with Plaintiffs, returned to his employment

with *Barreiro Construction,* and where he disclosed the design features and the engineering specifications of the Plaintiffs proprietary molds. Upon information and belief, the *SEVILLA* obtaining employment by Concrete Services was for sole purpose of obtaining access to and theft of Concrete Services Trade Secrets, *SEVILLA* employment history with Plaintiffs is set forth in his "Employee Pay Sequence Detail" annexed hereto as **Exhibit "8".**

57. The *SEVILLA* unauthorized (a) photographing of the Plaintiffs' FDOT Compliant Molds, duplication and recording of the design features and the engineering specifications of the Plaintiffs' FDOT Compliant Molds, and (b) the subsequent disclosure thereof by *SEVILLA* to *Barreiro Construction* for its design and fabrication of FDOT Compliant Molds, comprises trade secret theft, in violation of Florida Law, *§812.081 Fla.Stat*

58. At all times material hereto, *Barreiro Construction* knew that the *SEVILLA* photographing, duplicating and recording the design features and the engineering specifications of the Plaintiffs' FDOT Compliant Molds, during his employment by Concrete Services, was unauthorized and a breach of the *SEVILLA* obligation to maintain the Plaintiffs' tunnel mold design features and the engineering specifications confidential.

59. The *Barreiro Construction* fabrication of FDOT Compliant Molds, based upon the Plaintiffs' Trade Secrets utilizing Plaintiffs' confidential proprietary designs and engineering specifications of slip forming molds, obtained from SEVILLA, as set forth in Paragraph (58), comprises trade secret theft, in violation of Florida Law, *§812.081 Fla.Stat.*

60. The *Barreiro Construction* theft of Plaintiffs' proprietary designs and engineering specifications, as set forth in Paragraphs (58 & (59), is presumed to cause the Plaintiffs irreparable harm, entitling Plaintiffs to injunctive relief under Florida Law, *§542.33 Fla.Stat*

**WHEREFORE**, the Plaintiffs demand the following relief, as against the *Odebrech*,

(a) A permanent injunction enjoining *Barreiro Construction*, and all parties acting in concert with it, from any further use Plaintiffs' Trade Secrets, relating to Plaintiffs' proprietary molds;

(b) Destruction of all *Barreiro Construction* slip molds based upon the Plaintiffs' Trade Secrets, relating to Plaintiffs' proprietary molds;;

(c) Disgorgement of all profits derived directly and indirectly from the unauthorized use of the Plaintiffs' Trade Secrets, and, in no event less than a reasonable royalty of $40/linear foot for structures fabricated with slip molds based the Plaintiffs' Trade Secrets;

(d) Exemplary damages of five (5) time the Defendants' profits, and not less than $40/linear foot; and

(e) Reasonable attorney fees and costs

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs herein demand a jury determination of all factual matters in dispute between the parties, and on all the issues so triable.

Attorney For Plaintiffs

/s/ John H. Faro
John H. Faro, Esq.
Florida Bar No. 527,459

Faro & Associates
1395 Brickell Avenue
Suite 800
Miami, FL 33131

email:Johnf75712@aol.com

Phone 305, 761-6921
Fax 305, 726-0029

William R. Treuba, Esq.
Treuba & Suarez
9150 S. Dadeland Blvd, Suite 1008
Miami, Florida 33156

Phone: (305) 482-1001
Email: WTrueba@lex188.com